# IN THE COURT OF APPEALS OF IOWA

No. 19-1829
Filed January 9, 2020

**IN THE INTEREST OF C.K. and M.K.,**
**Minor Children,**

**R.K., Mother,**
Appellant.

_____

Appeal from the Iowa District Court for Scott County, Korie Shippee, District

Associate Judge.

A mother appeals the termination of her parental rights to two minor children

under Iowa Code chapter 232 (2019). **AFFIRMED.**

Martha L. Cox, Bettendorf, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant

Attorney General, for appellee State.

Rebecca C. Sharpe of Aitken, Aitken & Sharpe, P.C., Bettendorf, attorney

and guardian ad litem for minor children.

Considered by Bower, C.J., and May and Greer, JJ.

**GREER, Judge.**

A mother appeals the termination of her parental rights to two minor children under Iowa Code chapter 232 (2019).[1]  She does not contest the grounds for termination but claims two exceptions to termination apply: (1) the children are placed with relatives and (2) termination would harm the children based on their closeness with the mother.  The mother requests a guardianship instead of termination.  We decline to apply the permissive exceptions to termination, reject the mother's request for a guardianship, and affirm the termination order.

## I.  Background Facts and Proceedings.

R.K. is the mother of C.K. and M.K., born in 2012 and 2014, respectively.  The mother also has three older children who were unaffected by the juvenile court's termination order: one who was an adult during these proceedings and two who by agreement of the parties are in a guardianship with the maternal grandparents.

In March 2018, the family came to the attention of the Iowa Department of Human Services (DHS) because of concerns the parents were using methamphetamine, the family was homeless, and the children had poor attendance at school.  The children later tested positive for methamphetamine.  This is the fourth time since 2005 that the parents have been involved with DHS for substance-abuse-related concerns.

DHS removed the children from the parents' custody on April 17.  C.K., M.K., and two of their older siblings were first placed with the maternal

---

[1] The father's parental rights were also terminated.  He does not appeal.

grandparents. The grandparents could not care for all four children, so the paternal great aunt and uncle offered to care for C.K. and M.K., and the children have remained in their care throughout the entirety of these proceedings.

The children were adjudicated in need of assistance on June 6. After a permanency hearing in April 2019, the juvenile court directed the State to proceed with termination. The State filed the termination petition in July.

At the time of the termination hearing in October, the children had been living with their great aunt and uncle for almost eighteen months. Despite being offered many services throughout this case, the mother continued to struggle with substance-abuse and mental-health issues and she had not found a job or stable housing. The mother did not dispute that grounds existed to terminate her rights. Instead, she asked the court to apply an exception to termination and to establish a guardianship with the children's great aunt and uncle instead of termination. DHS, the court appointed special advocate (CASA), and the guardian ad litem (GAL) all recommended termination.

The court found the State proved grounds for termination, termination is in the children's best interests, and no statutory exceptions applied to prevent termination. The court chose termination instead of a guardianship because the children are in a safe, loving home with the great aunt and uncle who are interested in adopting the children, and termination and adoption are the children's best chance at permanency. The mother appeals.

## II. Standard of Review.

We review termination of parental rights cases de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). "We are not bound by the juvenile court's findings

of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). Our paramount consideration is the best interest of the children. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

### III. Analysis.

Because the mother argues two statutory exceptions apply to prevent termination we address those concerns first. "Once we have established that the termination of parental rights is in the children's best interests, the last step of our analysis is to determine whether any exceptions in section 232.116(3) apply to preclude the termination." *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016). It is the mother's burden to prove that an exception to termination applies. *A.S.*, 906 N.W.2d at 476. These exceptions "are permissive, not mandatory." *Id.* at 475 (quoting *A.M.*, 843 N.W.2d at 113). "We may use our discretion, 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.'" *Id.* (quoting *M.W.*, 876 N.W.2d at 225).

Here the mother relies on two exceptions. The first exception provides that the juvenile court need not terminate parental rights if "[a] relative has legal custody of the child[ren]." Iowa Code § 232.116(3)(a). The other exception applies when "[t]here is clear and convincing evidence that the termination would be detrimental to the child[ren] at the time due to the closeness of the parent-child relationship." *Id.* § 232.116(3)(c).

Contrary to her assertions, the mother failed to show that either exception should apply here. First, while it is true that the children are placed in the legal

custody of their relatives, this will not automatically prevent termination. *Cf. A.M.*, 843 N.W.2d at 113 (concluding the exception in section 232.116(3)(a) was not applicable when the child was "not in the legal custody of her" family members). "An appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child." *In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997).

All agreed that the great aunt and uncle provided a stable, loving home for the children, learned how to manage the younger child's diabetes, and worked to maintain the children's relationships with their older siblings and maternal grandparents. The great aunt and uncle are open to adopting the children and providing them with a permanent home. On the other hand, the mother, as recently as August 2019, admitted to using methamphetamine, refused mental-health services, and remained homeless and jobless. We choose stability for children. Thus, after considering both the immediate and long-term best interests of the children, we find placement with the great aunt and uncle should not preclude termination and decline to apply the statutory exception in section 232.116(3)(a).

As for the second exception—that termination would be detrimental because of the close parent-child relationship—our "consideration must center on whether the child[ren] will be disadvantaged by termination, and whether the disadvantage overcomes" the parent's inability to provide for the children's needs. *In re D.W.*, 791 N.W.2d 703, 708–09 (Iowa 2010). The children's best interests remain our primary concern. *M.W.*, 876 N.W.2d at 225.

While the children love the mother and are bonded with her, the mother failed to show that the bond is so close to prevent termination. At a fundamental

level, because the mother has failed to address her substance-abuse and mental-health issues, find a job, and find housing, she has shown she cannot care for the children and is unwilling or unable to take the steps necessary to become a suitable parent. This is especially troubling given the younger child's severe health concerns. After the child was diagnosed with diabetes, the mother was rarely present during his hospital stay and failed to complete a training to learn how to administer insulin, manage the child's blood sugar, and respond if the child were to go into diabetic shock. Failure to properly monitor the child's blood sugar could be fatal. The mother cannot show that any bond she has with the children overcomes her inability to provide for their needs. We find this exception inapplicable.

Finally, it is understandable that because the older children are with relatives under guardianship, the mother requested that these children should be as well. Yet those are older children, and the children involved here are elementary-aged children. So for the same reasons outlined above, we disagree with the mother that the juvenile court should have established a guardianship instead of termination. "[A] guardianship is not a legally preferable alternative to termination." *A.S.*, 906 N.W.2d at 477 (quoting *In re B.T.*, 984 N.W.2d 29, 32 (Iowa Ct. App. 2017)). We give weight to the DHS, CASA, and GAL opinions recommending termination. *See A.M.*, 906 N.W.2d at 476. The children have a safe and stable home with the great aunt and uncle who have expressed an interest in adopting them. *See* Iowa Code § 232.116(2)(b). These young children deserve permanency, and we decline to establish a guardianship. *See In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010) ("It is well-settled law that we cannot deprive a

child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child.").

**IV. Disposition.**

For these reasons we affirm the juvenile court's termination order.

**AFFIRMED.**